UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY FREYRE, | |
| Plaintiff, | |
| v. | 23-cv-4222 (NRM) (JRC) |
| | **MEMORANDUM AND ORDER** |
| NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY, | |
| Defendant. | |

NINA R. MORRISON, United States District Judge:

Anthony Freyre, proceeding *pro se*, brings this action against the New York City School Construction Authority ("NYCSCA") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Americans with Disabilities Act of 1990 ("ADA"). Freyre, who was born in 1961, alleges that he was discriminated against based on his race, disability, and age at the hands of his supervisor, Gregory Glasgow, while employed at NYCSCA. He alleges that this discrimination resulted in him being forced to quit his position, thereby forfeiting his retirement benefits.

Defendant NYCSCA moves to dismiss Freyre's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from the plaintiff's Complaint and Letter in Opposition to the Defendant's Motion to Dismiss. "In evaluating the legal sufficiency of a *pro se* plaintiff's claims, a court may rely on the plaintiff's opposition papers." *Parks v. Montefiore Med. Ctr.*, No. 23-CV-4945 (JPO) 2025 WL 370830, at *3 (S.D.N.Y. Feb. 3, 2025) (quoting *Vlad-Berindan v. MTA N.Y.C. Transit,* No. 14-CV-675 (RJS), 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2024). Additionally, the Court considers the emails Freyre has attached to his opposition. *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) ("In determining the sufficiency of [plaintiff's] complaint, we may consider documents attached to it . . . .").

Anthony Freyre worked as a Manager of Operations at NYCSCA since March 3rd, 1998. *See* Plaintiff's Complaint ("Compl."), ECF No. 1, at 8 (Jun. 6, 2023).[1] As part of his duties, he performed contract compliance reviews, made site visits, attended onsite project meetings, participated in outreach, met with SCA contractors, and assisted in other related activities. *See* Plaintiff's Letter in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp. Letter"), ECF No. 28 at 6 (Oct. 15, 2024).

---

[1] Pincites refer to page numbers generated by CM/ECF, and not the document's internal pagination.

He has Coronary Artery disease, has undergone open heart surgery and a coronary angioplasty, and has received a stent placement.  *See* Pl.'s Opp. Letter at 2.  During the COVID-19 pandemic, Freyre received an accommodation to work remotely due to his health conditions.  *See* Compl. at 8.  Beginning in May 2021, Freyre's supervisor, Gregory Glasgow, began to comment on this accommodation.  *See id.* at 4 (indicating that the discrimination occurred between May 2021 and September 2022).

Freyre alleges that Glasgow harassed him "almost every day because [of his] age and [] disability."  Compl. at 9.  In a June 2022 email to Glasgow and Vice President of the Department Suzanne Veira, Freyre said that Glasgow's "derogatory comments" and "micro aggressions[sic]" had "created a "[h]ostile [w]ork [e]nvironment" for him and other team members.  Pl.'s Opp. Letter at 8.  For instance, during a team call, Glasgow told Freyre's coworkers that they could "[g]ive [the work] to [the Plaintiff], he's home doing nothing."  *Id.* at 8; Pl.'s Opp. Letter at 8.  Glasgow also regularly told Freyre that he couldn't supervise him remotely and would accuse Freyre of not performing certain job duties.  Compl. at 8.  In May 2022, Freyre's remote work accommodations were extended by NYCSCA, and he was assigned additional responsibilities outside his job description to "supplement [his] remote work."  Pl.'s Opp. Letter at 6.  Glasgow also commented on Freyre's age and race, calling him the "old guy of the team" and "the old Spanish guy."  *Id.* at 2.

Freyre complained to NYCSCA's internal EEOC Officer Mariann Egri several times but never received any follow-up or resolution to his complaints.  Compl. at 9–10.  The constant pressure and stress of Glasgow's comments made Freyre sick on

multiple occasions, to the point of requiring "cardiac intervention." *Id.* at 9.  After sixteen months of these comments and alleged harassment from Glasgow, the "unnecessary stress" from Glasgow caused to Freyre to resign in September 2022. *Id.*

On March 6, 2023, Freyre filed an administrative complaint with the EEOC. *Id.*  He received a "Determination and Notice of Rights" letter from the agency a week later, which informed him that while the agency would "not proceed further with its investigation," it "ma[de] no determination about whether further investigation would establish violations of the statute." *Id.* at 10.

Freyre brought this action against NYCSCA on June 6, 2023, claiming that Glasgow discriminated against him due to his disability under the ADA, his age under the ADEA, and his race under Title VII. *Id.* at 3–5.  He also alleged that he was retaliated against for complaining about Glasgow's behavior. *Id.* at 8–9; Pl.'s Opp. Letter at 2.  Freyre is seeking $31,000 of retirement contributions accumulated during his twenty-four-year career at NYCSCA, along with damages for the harm to his reputation, pain and suffering, and court fees.  Compl. at 6.  Defendant NYCSCA filed this instant motion on November 8, 2024, to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See* ECF No. 29.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a motion to dismiss, the Court

must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the Plaintiff. *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). To "evaluat[e] the legal sufficiency of a *pro se* plaintiff's claims, [the Court] may rely on the plaintiff's opposition papers." *Parks*, 2025 WL 370830, at *3 (S.D.N.Y. Feb. 3, 2025) (quoting *Vlad-Berindan*, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2024)).

Under Title VII, to survive a motion to dismiss, a plaintiff need not "plead a *prima facie* case under *McDonnell Douglas*," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015), but must merely show that "absent direct evidence of discrimination," their pleadings "plausibly" support the facts in the complaint. *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023). Specifically, he must show that he "(1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). "The same requirements apply for claims under the ADEA and the ADA except that under the fourth prong, the plaintiff's age or disability must be a but-for cause (rather than a motivative cause) of the plaintiff's injury." *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 89 (S.D.N.Y. 2024) (JLR) (citing *Lively v. WAFRA Inv. Advisory Grp. Inc.*, 6 F.4th 293, 302–03, 302 n.3 (2d Cir. 2021), and *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019)). For *pro se* litigants, courts are "obliged to construe the plaintiff's pleadings liberally;" the complaint should be read to raise "the

5

strongest arguments" possible, "particularly so when the pro se plaintiff alleges that his civil rights have been violated." *Ninying v. Fire Dep't*, 416 F. Supp. 3d 175, 178 (E.D.N.Y. 2017) (LDH) (internal citations omitted).

## DISCUSSION

### I.    Title VII Discrimination Claims

NYCSCA argues that Freyre's claim alleging it racially discriminated against him must fail because the Plaintiff does not meet Title VII's exhaustion requirement. Def. Mem. at 8–9, ECF No. 29-1.  This Court agrees.

Under Title VII, prior to bringing a suit in federal court, a claimant must file a timely complaint with the EEOC and obtain a right-to-sue letter.  *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001).  The requirement to exhaust administrative remedies before bringing suit is designed to give the EEOC an opportunity to investigate all alleged bases of discrimination properly.  *Shah v. N.Y. Dep't of Civ. Serv.*, 168 F.3d 610, 614 (2d Cir. 1999).  Recognizing that employees often complete EEOC complaints without the benefit of counsel, courts allow *pro se* litigants to raise additional claims in their federal complaint so long as they are "reasonably related" to a claim made in the administrative charge.  *Williams*, 458 F.3d at 70; *Butts v. N. Y. Dep't of Hous., Preservation & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993).  To determine if claims are reasonably related, a court must evaluate the "specific factual allegations" in the administrative complaint.  *Williams*, 458 F.3d at 71 (finding a sex discrimination claim survived exhaustion because, while the

plaintiff had only explicitly pled retaliation in their EEOC complaint, the facts showed evidence of sexual harassment such that the EEOC should have been on notice to investigate any underlying Title VII discrimination claims).    However, courts in this Circuit have generally held that claims in a federal complaint alleging discrimination based on a protected classifications distinct from those asserted in administrative filings are not reasonably related.    *See, e.g.*, *Culbertson v. Charosa Found. Corp.*, No. 03-CV-3742 (SJF), 2004 WL 2370686, at *3 (E.D.N.Y. Oct. 18, 2004) (finding that an administrative complaint alleging gender discrimination was not reasonably related to claims of age, race, and religious discrimination); *see, e.g.*, *Murray v. Brooklyn Pub. Libr.*, No. 96-CV-2786 (JG), 1997 WL 1048899, at *3 (E.D.N.Y. June 13, 1997) (dismissing a gender discrimination charge where administrative complaint had only alleged discrimination on the basis of race and age).

In his administrative complaint, Freyre did not complain of nor make any reference to racially discriminatory actions or statements made by Glasgow or anyone else.    *See* Compl. at 8–9.    As such, he did not provide the EEOC with the required notice about potential race-based discrimination.    *See, e.g.*, *Little v. Nat'l Broadcasting Co., Inc.*, 210 F. Supp. 2d 330, 375 (S.D.N.Y. 2002) (SAS) (finding that the reasonably related exception does not apply because there were no descriptions of racial harassment or racial discrimination, or any mention of race at all in the plaintiff's administrative complaint).    While he may have complained to NYCSCA's internal EEOC employee about such comments, *see* Pl.'s Opp. Letter at 2, Freyre did

not do so in his formal administrative charge to the EEOC.  As such, all Title VII claims, including any race-based retaliation claims, must be dismissed.

## II.    Intentional Discrimination Claims

NYCSCA argues that the Plaintiff's intentional discrimination claims under the ADA and ADEA must be dismissed under Rule 12(b)(6).  Def. Mem. at 9–12, 15–18.  For the following reasons, the Court disagrees, and denies this aspect of NYCSCA's motion.

### a.  ADA Claim

To establish a *prima facie* discrimination case under the ADA, a plaintiff must show that: (1) his employer was subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job; and (4) he suffered adverse employment action because of his disability. *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (citing *Sista v. CDC Ixis N. Am. Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).  NYCSCA does not argue that Freyre did not meet the first or third factors, but does claim that Freyre failed to plead that he has a qualifying disability and that an adverse employment action was taken.  Def. Mem. at 15–18.  The Court disagrees.

### i.    Disability As Defined Under the ADA

Under the ADA, a disability is defined as "(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment."

42 U.S.C. § 12102(1). This definition shall be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms [of the ADA]." 42 U.S.C. § 1202(4). "Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005).

NYCSCA does not contest that Freyre's heart condition is a physical impairment, nor that working is a "major life activity." *See* Def Mem. at 16; *see* 42 U.S.C. § 12102(2) ("[M]ajor life activities include . . . working"). Rather, they argue that he "has not plausibly pleaded that his [impairment] *substantially limits*" his ability to work. Def. Reply, ECF No. 29-3 at 11 (quoting 42 U.S.C. § 12102(1)) (emphasis supplied).

However, whether a disability substantially limits a plaintiff's ability to work is a fact-intensive question. Where courts have found that a heart condition was not a qualifying disability, they have typically done so at summary judgment, after finding that the plaintiff did not present the required evidence from which a jury could infer substantial limitations. *See, e.g.*, *Villanti v. Cold Spring Harbor Cent. Sch. Dist.*, 733 F. Supp. 2d 371, 378–79 (E.D.N.Y. 2010) (ADS), *reconsidered on other grounds*, No. 08-CV-434, 2011 WL 13302730 (2011) (granting in part the defendant's motion for summary judgment on the plaintiff's ADA claim because the medical evidence of her heart condition was insufficient to show that she was substantially limited in working); *Scott v. Flaghouse, Inc.*, 980 F. Supp. 731, 734 (S.D.N.Y. 1997),

9

*vacated in part on other grounds*, 159 F.3d 1348 (2d Cir. 1998) (granting summary judgment for the employer because the court found the plaintiff was not actually disabled as her heart condition was considered benign by doctors and she was "fairly asymptomatic"). Here, Freyre's pleadings alleged that his heart condition did impact his ability to perform his job, *see* Pl.'s Opp. Letter at 4 (alleging that emails were sent between parties in which Freyre asked to move a meeting because he had to recover from a medical procedure), and his employer even recognized as much, providing him with accommodations to work from home and not attend in person meetings because of his condition, *see* Compl. at 8. Freyre has clearly pled that his disability substantially limited his ability to work.

NYCSCA argues that a "diagnosis alone" cannot establish a disability under the ADA. Def. Mem. at 16 (citing *Ibela v. Allied Universal*, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (summary order) (finding that dismissing a complaint was appropriate where the plaintiff simply submitted a diagnosis without alleging "any facts showing that his [impairment] impacted, let alone substantially limited, a major life activity"). Freyre, however, has pled more than a "diagnosis alone." He not only pled that his condition was such that he was given accommodations by his employer, *see* Compl. at 8, but also that — combined with the extreme stress of his job — it forced him to seek "cardiac intervention," *id.* at 9.

NYCSCA also argues that the plaintiff is not "significantly restricted" from performing a broad range of jobs. Def. Mem. at 17. In *Darcy v. Lippman*, a case cited by NYCSCA, the Second Circuit relied on the fact that the plaintiff "conceded that he

was able to perform his own job without accommodation" in holding that plaintiff was not restricted from performing a broad range of jobs. 356 Fed. App'x 434, 437 (2d Cir. 2009) (summary order). But here, Freyre *has* affirmatively pled that he needed accommodations to perform his job, and for a time, his employer did provide them. *See* Compl. at 8. NYCSCA's reliance on *Woolf v. Strada* for the proposition that Freyre did not plead that he was significantly restricted from performing a broad range of jobs is similarly inapposite, as the Second Circuit in that case affirmed a *grant of summary judgment*, noting that the plaintiff had not presented sufficient evidence from which a jury could find that his impairment "limited his ability to work in a . . . broad range of jobs." 949 F.3d 89, 95 (2d Cir. 2020). Freyre has certainly *pled* that his heart condition limited his ability to work in a broad range of jobs. Whether or not he can produce the evidence behind that claim to survive a summary judgment motion is a question for another day. His complaint, however, readily satisfies the first prong of an ADA discrimination claim.

### ii.    Adverse Employment Action via Constructive Discharge

NYCSCA next argues that even if Freyre's pleadings establish that he had a disability within the meaning of the ADA, he does not adequately plead that he suffered an adverse employment action. Def. Mem. at 17–18. The Court disagrees.

"An 'adverse employment action' for the purpose of a discrimination claim pursuant to the ADA is a '"materially adverse change" in the terms and conditions of employment.'" *Giambattista v. American Airlines, Inc.*, 5 F. Supp. 3d 284, 292 (E.D.N.Y. 2014) (ADS) (AKT) *aff'd*, 584 Fed. App'x 23 (2d Cir. 2014) (quoting *Sanders*

*v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).  Constructive discharge is "functionally the same as an actual termination" and therefore "is considered an adverse employment action under Title VII."  *Notaro v. Fossil Indus., Inc.*, 820 F. Supp. 2d 452, 459 (E.D.N.Y. 2011) (ADS) (ARL) (quoting *Pa. State Police v. Suders*, 524 U.S. 129, 148 (2004)).  Because "[a]n adverse employment action has the same meaning in ADA discrimination claims as it does in the Title VII context," a constructive discharge is considered an adverse employment action for the purposes of an ADA discrimination claim.  *Kelly v. New York State Office of Mental Health*, 200 F. Supp. 3d 378, 396 (E.D.N.Y. 2016) (KAM) (SLT) (quoting *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 329 n. 14 (S.D.N.Y. 2015) (ER)).

Constructive discharge occurs when an employer "creates an intolerable work atmosphere that forces an employee to quit involuntarily."  *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)).  To be "intolerable," working conditions must be "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  *Giambattista*, 5 F. Supp. 3d at 292 (E.D.N.Y. 2014) (ADS) (AKT), (quoting *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987)).  Given this high standard, "mere dissatisfaction with job assignments or criticism from a supervisor do[es] not, in [itself], give rise to a constructive discharge claim."  *Kalp v. Kalmon Dolgin Affiliates of Long Island Inc.*, No. 11-CV-4000 (JG), 2013 WL 1232308, at *9 (E.D.N.Y. Mar. 27, 2013).

NYCSCA claims that Freyre was not constructively discharged because he only made conclusory allegations that failed to show his work environment was intolerable. Def. Mem. at 18–19. However, Freyre's pleadings point to several specific comments Glasgow made directly regarding Freyre's accommodations, such as stating that he was "home doing nothing," and that he couldn't supervise Freyre because he was "working remotely," as well as claiming that there was "nothing wrong with [him]." Compl. at 8; Pl.'s Opp. Letter at 2. These comments create a plausible inference that Glasgow held the view that he did not want Freyre to continue in his position because of these accommodations, comments which would be discriminatory under the ADA. *See Thompson v. State Farm Mut. Auto. Ins. Co.*, No. 22-CV-8375 (AS), 2024 WL 922820, at *3 (S.D.N.Y. Mar. 4, 2024) (citing cases where negative comments made about accommodations were seen as evidence of discriminatory intent). Importantly, Freyre does not allege that these comments were simply in passing or one-off remarks. Rather, he states that "Glasgow would harass [him] almost every day because [his] age and [his] disability bothered him. . . . [Glasgow] kept questioning [Freyre] about what [Freyre] was doing working remotely." Compl. at 9. While simply implying that Glasow harassed him daily may in itself be conclusory, that allegation — combined with the specific remarks Freyre alleges Glasgow made — certainly permits the inference that his working conditions were sufficiently "intolerable" and "so difficult or unpleasant that a reasonable person in [Freyre's] shoes would have felt compelled to resign." *Lopez*, 831 F.2d at 1188.

13

However, Freyre does not rely on Glasgow's comments alone to plead a constructive discharge. Freyre alleges that Glasgow also assigned him additional duties in response to his purportedly lighter remote workload. *See* Pl.'s Opp. Letter at 6. Finally, the fact that Freyre sought to redress the issues with Glasgow through other avenues prior to filing an administrative complaint — engaging in conversations with Glasgow and Vice President Veira and making complaints to NYCSCA's EEOC officer — supports Freyre's claim that Glasgow's actions were intolerable and led to his constructive discharge. *See* Pl. Opp. Letter at 2, 8; *contra Culmone-Simeti v. N.Y.C. Dep't of Educ.*, No. 17-CV-2313 (ER), 2019 WL 2409736, at *3–4 (S.D.N.Y. June 7, 2019) (dismissing a constructive discharge claim where plaintiff did not take advantage of other avenues of redress).

Freyre has sufficiently pled that Glasgow, by repeatedly denigrating Freyre's disability and the accommodations he had been granted, created an environment so intolerable that he was eventually forced to quit. As such, he has met all the elements of a discrimination claim under the ADA to defeat a motion to dismiss, and NYCSCA's motion to dismiss the ADA discrimination claim is denied.

### b. ADEA Claim

NYCSCA alleges that Freyre's ADEA claims also fail. Def. Mem. at 9–12. For essentially the same reasons as to the ADA claim, this Court disagrees.

ADEA claims are governed by the same four factors as ADA claims. *See Buon*, 65 F.4th at 79; *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 170 (E.D.N.Y. 2017) (LDH) (ST). NYCSCA does not dispute that Freyre was within the protected

age group or qualified for his position, Def. Mem. at 10, but it *does* argue that he did not suffer from an adverse employment action.  Def. Mem. at 11–12.  However, as discussed *supra*, Freyre's pleadings can reasonably make out a constructive discharge.  That constructive discharge was rooted in comments regarding both his accommodations and age.  *See* Compl. at 8 ("Mr. Glasgow would harass me almost every day because my age and my disability bothered him.").  As discussed *supra*, this is sufficient to meet the adverse employment action requirement for a discrimination claim.

NYCSCA further alleges that Freyre's allegations are merely conclusory and do not rise to an "inference of age discrimination."  Def. Mem. at 11.  However, Freyre does point to specific comments Glasgow made regarding his age.  *See* Pl.'s Opp. Letter at 2 (referring to Plaintiff as "the old guy of the team" or "the old Spanish guy").  In light of the Court's liberal reading of *pro se* pleadings, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), Freyre's pleadings demonstrate a plausible inference of age discrimination.

### III.    Hostile Work Environment

While NYCSCA does not explicitly address the Plaintiff's hostile work environment claim, to the extent that it seeks dismissal of that claim, the Court disagrees.

The standard for evaluating a hostile work environment claim is the same under Title VII, the ADEA, and the ADA.  *See Lebowitz*, 407 F. Supp. 3d at 181; *Fox*

*v. Costco Wholesale Corp.*, 918 F.3d 65, 74–75 (2d Cir. 2019).  Under Title VII, a plaintiff can establish a hostile work environment claim by showing that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The "severe or pervasive" standard has both a subjective and objective component. *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citing *Harris*, 510 U.S. at 21–22).  While the court can consider the "effect of the identified incidents on the employee's [subjective] psychological well-being," the conduct complained of must also be objectively severe or pervasive enough "that a reasonable person would find it hostile or abusive." *Id.*  A court can consider the "totality of the circumstances," including "facially neutral incidents," so long as "a reasonable fact-finder could conclude that they were, in fact, based on [the alleged discrimination]." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010).  And "[w]here an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff must show working conditions so intolerable that a reasonable person would have felt compelled to resign," which is "higher than the standard for establishing a hostile work environment." *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) (internal quotation marks omitted) (affirming summary judgment against Plaintiff's hostile work environment and constructive discharge claims).  Therefore, if Freyre's pleadings defeat a motion to dismiss his constructive discharge claims, his hostile work environment claim that

stems from the same circumstances is most likely also sufficient to defeat a motion to dismiss.

Within the time period identified, Glasgow made several comments that allude to Freyre's accommodations and age, such as stating that he was "home doing nothing," as well as referring to him as "the old guy." Compl. at 8; Pl.'s Opp. Letter at 2. While these comments may have subjectively caused the Plaintiff to feel distress, *see* Compl. at 9, taken in isolation, it is difficult to infer that any one of these statements "could be said to [have] substantially interfere[d] with or impair[ed] [Freyre's] ability to do his job." *Awad v. City of New York*, No. 13-CV-5753 (BMC), 2014 WL 1814114, at *7 (E.D.N.Y. May 7, 2014) (internal quotation marks omitted). Therefore, it is possible that these comments were not "extraordinarily severe" enough to meet the high bar required for a hostile work environment claim. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

However, a hostile work environment can be pled by identifying comments that are "sufficiently severe *or* pervasive." *Littlejohn*, 795 F.3d at 320 (emphasis supplied) (quoting *Harris*, 510 U.S. at 21). As discussed *supra*, Freyre pleads that Glasgow regularly made comments regarding Freyre's accommodations and age for over sixteen months. Compl. at 8–9, Pl.'s Opp. Letter at 2. Such frequency is not isolated or episodic. *See, e.g.*, *Doyle v. Am. Glory Rest. Corp.*, No. 23-CV-7624 (PAE), 2024 WL 1466161, at *6 (S.D.N.Y. Apr. 4, 2024) (denying a motion to dismiss for a hostile work environment claim where the complaint alleged defendants were making sexually offensive comments daily); *Cruz v. N.Y. State Dep't of Corrs. & Cmty. Supervision*,

No. 13-CV-1335 (AJN), 2014 WL 2547541, at *4 (S.D.N.Y. June 4, 2014) (denying a defendant's motion to dismiss where a plaintiff alleged that his "supervisor made almost-daily comments for over three years, remarking upon his physical appearance, gender, and sexual attractiveness while smiling seductively, and implying sexual intent"). Accordingly, Freyre has pled that Glasgow's statements were pervasive enough to survive a motion to dismiss his hostile work environment claim.

## IV. Retaliation

In addition to intentional discrimination claims, Freyre alleges a broad retaliation claim. *See* Compl. at 4. NYCSCA argues that Freyre has not adequately pled a retaliation claim. Def. Mem. at 12–15. The Court disagrees.

"To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). The same standard applies to claims made under the ADEA. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)). The plaintiff "need not establish that the conduct he opposed was actually a violation of the statute so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated th[at] law." *Sarno*, 183 F.3d at 159 (internal citations omitted).

NYCSCA attacks the causation element of Freyre's retaliation claim, alleging that it fails because his alleged protected activity was "requesting a reasonable accommodation on an unspecified date and by filing an EEOC charge." Def. Mem. at 13. NYCSCA argues that there is no way the EEOC charge caused retaliation because by the time the administrative complaint had been filed, "[Freyre] had already chosen to retire." *Id.* However, an EEOC charge is not the only protected activity which can lead to retaliation. Here, the protected activity here stems not from Freyre's EEOC claim, nor his request for an accommodation, but from the internal complaints Freyre made to NYCSCA's EEOC Officer Mariann Egri during his employment. Compl. at 8–9; Pl.'s Opp. Letter at 2. This is sufficient to show engagement in a protected activity. *Cf. Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 555 U.S. 271, 276 ("When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity." (internal quotations omitted)).

NYCSCA was aware of these internal complaints. *See* Pl.'s Opp. Letter at 7 (writing in a June 2022 email to Freyre that Glasgow and the Plaintiff "can continue this discussion of how to supervise [his] work with Suzanne or the SCA EEO Officer"). Construing Freyre's pleadings liberally in his favor, it can be fairly inferred that there is a causal nexus between these internal complaints and Glasgow's behavior, ultimately resulting in the Plaintiff's constructive discharge. While it is true that Freyre does not include specific dates for those internal complaints, *see generally id.*,

he does plead that he had raised these issues by June 14, 2022, *see id.* at 7 (attaching an email from Glasgow to Freyre expressing surprise at Freyre's complaints). The lack of specific dates, therefore, does not doom his claim. *See DeVore v. Neighborhood Hous. Servs. of Jamaica Inc.*, No. 15-CV-6218 (PKC), 2017 WL 1034787, at *11 n.18 (E.D.N.Y. Mar. 16, 2017) (noting that "because Plaintiff is *pro se*[] and has provided some dates that tend to support an inference of causation, the Court does not find the lack of precise dates to be fatal to Plaintiff's retaliation claim at this stage.").

Even if, as the Defendant suggests, the retaliation was not in response to Freyre's internal complaints, *see* Def. Mem. at 13, nor his initial request for accommodations in 2020 or 2021, *see id.* at 14, Freyre can meet his burden by showing that it came in response to a different protected activity: his request for continued accommodations in May 2022, *see* Pl.'s Opp. Letter at 6. As Freyre alleges, Glasgow continued making his discriminatory comments and assigning additional duties to him after May 2022, until he was forced to leave the job in September 2022. *See* Compl. at 8–9; Pl.'s Opp. Letter at 6. Thus, NYCSCA's claim that the constructive discharge was "over a year" after the original accommodation request, and as such the accommodation request could not have been the "but for" cause of him being forced to retire, is irrelevant. *See* Def. Mem. at 14. Only five months passed between Freyre's May 2022 request and his resignation in September 2022. Given that Freyre pled that he was subjected to pervasive harassment by Glasgow during that time, NYCSCA's argument that any adverse employment action could not have been caused by Freyre's protected activity is without merit. *See Espinal v. Goord*, 558 F.3d

119, 129 (2d Cir. 2009) (finding that while there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," six months between an action and an alleged retaliation "is sufficient to support an inference of a causal connection") (first quoting *Gorman-Bakos v. Cornell Co-op Extension.*, 252 F.3d 545, 554 (2d Cir. 2001)). Freyre's retaliation claim thus survives the motion to dismiss.

## **CONCLUSION**

For the reasons stated above, the Defendant's motion to dismiss Freyre's Title VII claim and related retaliation claims against NYCSCA is granted. The Defendant's motion to dismiss Freyre's ADA and ADEA claims alleging intentional discrimination, hostile work environment, and related retaliation under 12(b)(6) is denied.

SO ORDERED.

*/s/ Nina R. Morrison*

NINA R. MORRISON
United States District Judge

Dated: September 29, 2025
     Brooklyn, New York